# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALBERT BABB,<br>        Plaintiff,<br>v.<br>MICHAEL J. ASTRUE[1],<br>Commissioner of Social Security,<br>        Defendant. | Case No. CV 06-3558-JCR<br><br>MEMORANDUM OPINION<br>AND ORDER |

Albert Babb ("Plaintiff"), seeks review of the decision of Michael J. Astrue ("Defendant"), the Commissioner of the Social Security Administration, denying his application for Supplemental Security Income Benefits ("SSI"). As discussed below, this Court affirms in part, and denies in part, the decision of the Commissioner.

**I.    PROCEEDINGS**

On June 14, 2006, Plaintiff filed a Complaint seeking review of the Commissioner's denial of his application for disability with benefits under SSI. On January 3, 2007, Defendant filed both the certified Administrative Record ("AR") and an Answer. On March 1, 2007, the parties filed a Joint Stipulation

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of the Social Security Administration. Thus, Michael J. Astrue is substituted for Commissioner JoAnne B. Barnhart pursuant to Fed. R. Civ. P. 25(d)(1).

("JS").[2]

Thus, this matter is now ready for decision. As the Court advised the parties in its June 16, 2006, Case Management Order, the decision in this case will be made on the basis of the pleadings, the Administrative Record, and the Joint Stipulation filed by the parties. In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court will determine which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g) (2006).

This Memorandum Opinion and Order shall constitute the Court's findings of fact and conclusions of law.

## II.  BACKGROUND

On April 30, 2004, Plaintiff, then age fifty-four, filed an application for SSI. (AR at 13, 65-69.) Plaintiff alleged disability on the basis of severe left hip pain, chronic low back pain, heart murmur, poor vision, severe gas problems, acid reflux, high blood pressure, and left ankle pain. (AR at 14, 65.) His application was denied initially and on reconsideration. (AR at 37-44.) Subsequently, Plaintiff sought a hearing. (AR at 56-57.) On December 1, 2005, Plaintiff appeared at the hearing before an Administrative Law Judge ("ALJ") with counsel, and testified on his own behalf. (AR at 13-19.) In particular, Plaintiff initially alleged an onset of disability from January 12, 1991. (AR at 13-14, 62.) However, at the hearing, Plaintiff, through counsel, amended the onset date of disability to November 5, 2004. (AR at 198-99; JS at 2.) Plaintiff also testified that his highest level of education was the tenth grade and denied having finished high school, or receiving an equivalent high school education. (AR at 200.) Plaintiff also alleges that he had a stroke, and suffers from a frozen shoulder, as well as problems with his lower back and right hip. (AR at 201-02.) He further stated that he can stand or sit only for about half an hour without problems and could walk ". . . maybe to the corner market . . . ." (AR at 202, 205.)

The ALJ also heard testimony from a vocational expert ("VE"), who testified that Plaintiff had no past relevant work experience or transferable skills. (AR at 17.) However, the VE further stated that

---

[2] Pursuant to U.S.C. § 636(c), the parties have consented to the Magistrate Judge conducting any and all proceedings in the instant matter and ordering the entry of final judgment.

2

Plaintiff was capable of making a vocational adjustment to other work, and found that Plaintiff could work as an information clerk. (AR at 17.) The VE identified 3,900 local and 700,000 national information clerk opportunities. (AR at 17.)

On December 30, 2005, the ALJ issued an opinion. The ALJ found, *inter alia*, that Plaintiff suffered from "severe" chronic low back pain, poor vision, hip pain, heart murmur, acid reflux, and gas problems. (AR at 18.) However, the ALJ also determined that Plaintiff's impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR at 18.) The ALJ concluded that Plaintiff's subjective allegations regarding his limitations were not totally credible. (AR at 18.)

Based on the evidence presented, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to "occasionally lift and carry fifty pounds and frequently lift and carry twenty [pounds]. He could stand, walk and sit for a total of six hours, each, in an eight-hour workday." (AR at 18.) In light of the findings, the ALJ concluded that Plaintiff could perform a "significant number of jobs in the national economy." (AR at 19.) Therefore, the ALJ denied Plaintiff benefits based on his finding that he was not under a "disability" as defined by the Social Security Act. (AR at 19.)

Plaintiff filed a request for review of the ALJ's decision with the Appeals Council. (AR at 9.) The Appeals Council ultimately denied review, thereby making the decision of the ALJ the final decision of the Commissioner in this matter. (AR at 5-8.)

On June 8, 2006, Plaintiff timely filed the instant action, seeking judicial review of the denial of benefits by the Commissioner.

**III.   DISPUTED ISSUES**

As reflected in the Joint Stipulation, the disputed issues which Plaintiff is raising as the grounds for reversal and/or remand are as follows:

    1.   Whether the ALJ properly evaluated Plaintiff's nonexertional limitations; and

    2.   Whether the ALJ failed to carry the Administration's burden at Step 5 of his analysis.

## IV. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. This Court must review the record as a whole and consider adverse as well as supporting evidence. *Green v. Heckler*, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the ALJ's decision must be upheld. *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984).

## V. FIVE-STEP SEQUENTIAL EVALUATION TO DETERMINE DISABILITY

A disability claimant must show that a medically determinable physical or mental impairment prevents the claimant from engaging in substantial gainful activity and that the impairment is expected to result in death or to last for a continuous period of at least twelve months. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998); 42 U.S.C. § 423(d)(1)(A) (2004).

Disability claims are evaluated according to the five-step procedure described below. *See Bowen v. Yucker*, 482 U.S. 137, 140-42 (1987); *Reddick*, 157 F.3d at 721; *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995, *as amended* April 9, 1996); 20 C.F.R. §§ 404.1520, 416.920 (2007).

> **Step One:** Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> **Step Two:** Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> **Step Three:** Does the claimant's impairment or combination of impairments meet or equal an impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("The Listings")? If so, the claimant is automatically determined disabled. If not, proceed to step four.

> **Step Four:** Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> **Step Five:** Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester*, 81 F.3d at 828 n.5.

The term "severe," as used in Step Two, means any impairment or combination of impairments that significantly limits the physical or mental ability to perform basic work activities. Residual functional capacity ("RFC") is what a claimant can still do despite existing "exertional" (*i.e.*, strength related) and "nonexertional" limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 nn.5-6 (9th Cir. 1989). Nonexertional limitations restrict ability to work without directly limiting strength, and include mental, sensory, postural, manipulative, and environmental limitations. *Penny v. Sullivan*, 2 F.3d 953, 958 (9th Cir. 1993); *Cooper,* 880 F.2d at 1155 n.7; 20 C.F.R. § 404.1569a(c) (2007).[3]

A claimant has the burden (through Step Four) of proving an inability to perform past relevant work. *Reddick*, 157 F.3d at 721; *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992). If this burden is met, a *prima facie* case of disability is established and the burden shifts to the Commissioner (Step Five) to establish that the claimant can perform alternative work. *Reddick*, 157 F.3d at 721; *Drouin*, 966 F.2d at 1257; 20 C.F.R. §§ 404.1520, 416.920. The Commissioner can meet this burden by reference to the Medical-Vocational Guidelines ("Grids") at 20 C.F.R. Part 404, Subpart P, App. 2, or by relying on vocational expert ("VE") testimony. *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001) (*citing Desrosiers,* 846 F.2d at 576-77)). If VE testimony is used, "the [VE] must identify a specific job or jobs in the national economy having requirements that the claimant's physical and mental abilities and vocational qualifications would satisfy." *Osenbrock*, 240 F.3d at 1162-63.

---

[3] Nonexertional limitations include difficulty in one or more of the following: functioning because of nervousness, anxiety or depression, maintaining attention or concentration; understanding instructions; seeing or hearing, tolerating physical features of a work setting; and manipulative or postural functions (*e.g.* reaching, handling, stooping or crouching). *See* 20 C.F.R. § 404.1569a(c)(1) (2007). Pain may be either an exertional or nonexertional limitation. *Penny*, 2 F.3d at 959; *Perminter v. Heckler*, 765 F.2d 870, 872 (9th Cir. 1985); 20 C.F.R. § 404.1569a(c).

## VI. DISCUSSION

### A. The ALJ Made a Proper Credibility Determination Regarding Plaintiff's Nonexertional Limitations

Plaintiff contends that the ALJ improperly evaluated and discounted both Plaintiff's testimony and evidence concerning his limitations. (JS at 5.) In contrast, Defendant asserts that the ALJ properly considered Plaintiff's statements, and stated specific, clear, and convincing reasons for discounting Plaintiff's complaints, including the lack of objective medical evidence to support Plaintiff's allegations of pain and limitation. (JS at 9.) In addition, Plaintiff's daily activities were inconsistent with his pain complaints. (JS at 9.) This Court agrees with Defendant.

The ALJ is not required to blindly accept as true every allegation made by a plaintiff. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). In fact, "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of diasbililty . . . there must be medical signs and findings . . . which show the existence of a medical impairment . . . which could reasonably be expected to produce the pain or other symptoms alleged." 42 U.S.C. § 423(d)(5)(A) (2007); *see Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989); *Fair*, 885 F.2d at 600. At the same time, "once the claimant produces objective medical evidence of an underlying impairment, an adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of the pain." *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*citing Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986)).

If the ALJ finds a claimant's testimony as to the severity of the pain and impairments unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. *See Bunnell*, 947 F.2d at 345-346. However, the ALJ is only required to provide clear and convincing reasons for rejecting the claimant's testimony when there is no affirmative evidence of malingering. *See Smolen v. Chater*, 80 F.3d 1273, 1283-83 (9th Cir. 1996). To determine whether a plaintiff's subjective testimony of symptoms is credible, the ALJ may consider, among other things, the following evidence: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid;

6

(2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. *Smolen*, 80 F.3d at 1284; *see also Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002) (listing factors such as (1) a claimant's reputation for truthfulness; (2) inconsistencies either in his testimony or between his testimony and his conduct; (3) his daily activities; (4) his work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains). If the ALJ's credibility finding is supported by substantial evidence in the record, this Court may not engage in second-guessing. *See Morgan v. Comm'r of Soc. Sec. Admin.,* 169 F.3d 595, 599 (9th Cir. 1999).

In this case, the ALJ articulated adequate reasons for rejecting Plaintiff's pain testimony and his nonexertional limitations and disability. Contrary to Plaintiff's argument, the ALJ did not solely rely on the minimal objective evidence and Plaintiff's daily activities in discrediting his testimony. In fact, while these factors were among those he relied on, the ALJ made additional specific, clear, and convincing medical findings to support his credibility determination. *Thomas* 278 F.3d at 959-60.

In considering Plaintiff's testimony regarding his daily activities, the ALJ explained that Plaintiff's daily activities of playing guitar, watching movies, visiting his dad, and ironing his clothes "were inconsistent with his complaints of debilitating physical impairments." (AR at 15.) Notably, in a "Daily Activities Questionnaire" form dated and signed by Plaintiff on April 20, 2004, Plaintiff attested to cooking his own meals at least twice a day, "including a four [course] dinner," and going to the grocery store once a month with his roommate or neighbor. (AR at 73-74.) At the grocery store, Plaintiff initially stated that his roommate or neighbor pushed his grocery cart "sometimes," yet, immediately following that statement, Plaintiff modified his statement to say that these individuals would push his grocery cart "most of the time." (AR at 74.) Plaintiff's other daily activities included vacuuming the floor and watering the lawn. (AR at 74.) Subsequent to Plaintiff's alleged mild stroke on November 24, 2004, at the hearing, Plaintiff testified that his condition "remain[ed] the same." (AR at 204.) He asserted that he was able to sit or stand for "twenty [minutes] to half an hour" before adjusting position, and could walk to the corner market and back. (AR at 205.) Thus, the ALJ's interpretation was rational, and the Court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir.

1989).

Moreover, the ALJ considered the objective medical findings in discounting Plaintiff's testimony that he suffers from chronic low back pain, poor vision, hip pain, heart murmur, acid reflux, severe gas problems, and a mild stroke. (AR at 15.) Although Plaintiff was assessed with musculoskeletal pain in a medical report dated December 30, 2003, an "[x]-ray examination of the lumbar spine and both shoulders dated March 4, 2004," revealed no significant abnormalities. (AR at 15, 38, 159.) An x-ray of the chest dated March 4, 2004, also showed "no acute cardiopulmonary disease." (AR at 158.) With respect to Plaintiff's June 16, 2004, diagnosis of cataract and poor vision, the ALJ found that on June 30, 2004, Plaintiff underwent a cataract extraction and intraocular lens placement of the right eye. (AR at 15, 38, 129-30.) After the surgery, in a medical report dated July 29, 2004, Plaintiff's visual acuity was 20/30 in the right eye. (AR at 15, 150.)

As to Plaintiff's allegations of chronic low back and shoulder pain, x-rays of this area revealed normal findings. (AR at 15, 38, 159.) Similarly, treatment notes dated January 11, 2005, indicated that Plaintiff's chronic low back pain was alleviated with back exercises and Tylenol and Flexeril. (AR at 169.) Also, on March 28, 2005, Plaintiff again complained of chronic low back pain, but on examination, the medical notes showed that he was again prescribed Flexeril and Tylenol, and no limitations were noted in the record. (AR at 15, 166.) The ALJ further found that "there was very limited evidence regarding [Plaintiff's] hip pain, acid reflux; and severe gas problems." (AR at 15.)

Plaintiff also stated that he suffered a mild stroke, as evidenced by the January 24, 2005, treatment notes. (JS at 6; AR at 151, 168-69.) However, the ALJ found that ". . . the medical evidence showed no diagnosis of a stroke or cerebrovascular accident." (AR at 15.) While the records indicated that Plaintiff reported having suffered a mild stroke or cerebrovascular accident to the attending physicians, upon further review of the medical records, the Court finds that there were no independent, objective medical records corroborating this contention. Thus, although lack of medical evidence cannot form the sole basis for discounting Plaintiff's subjective testimony regarding his nonexertional limitations, it is a factor that the ALJ can consider in his credibility analysis, especially where there are inconsistencies between a plaintiff's subjective testimonies and the objective medical findings. *Morgan*, 169 F.3d at 600.

8

For the aforementioned reasons, the ALJ's credibility finding is supported by substantial evidence in the record and will not be controverted by this Court. *Morgan*, 169 F.3d at 599.

### B. The ALJ Erred at Step Five of the Sequential Evaluation Process

Since the ALJ found that Plaintiff was unable to perform any of his past relevant work pursuant to 20 C.F.R. § 416.965, the burden shifted to the ALJ to complete Step 5 of the sequential analysis by showing that Plaintiff could still perform other types of substantial work that exist in the national economy. *See Reddick*, 157 F.3d at 721; *Swenson*, 876 F.2d at 687.

At Step 5, the ALJ found that Plaintiff had a "high school (or high school equivalent) education." (AR at 19.) Based on this finding, in combination with other factors, the ALJ utilized the Medical-Vocational Rule 203.21 grid, and concluded that Plaintiff could perform a significant number of jobs, and was therefore not deemed disabled. (AR at 18-19.) However, Plaintiff argues that he only has a tenth grade education. (JS at 10.) In support of this claim, Plaintiff points to testimony given during his hearing in which he testified that his highest level of completed education was the tenth grade. (AR at 200.) Plaintiff avers that because he does not have a high school education, the ALJ should have applied Rule 203.10, rather than Rule 203.21, of the Medical-Vocational grid which would have resulted in a finding of disability. (JS at 10, 12.)

In opposition, Defendant contends that the ALJ applied the proper grid[4] ". . . because all of the vocational factors (RFC, age, education and past work [experience]) matched." (JS at 13.) Defendant argues that the ALJ's determination that Plaintiff completed the twelfth grade is supported by the Disability Report dated April 20, 2004. Defendant maintains that despite the obvious contradiction in the record, the ALJ's conclusion must be upheld where evidence is susceptible to more than one rational interpretation. (JS at 14.) This Court disagrees with Defendant's conclusion.

Plaintiff's claim that the ALJ erred at Step Five is warranted. The evidence concerning Plaintiff's education is contradictory. The record shows that Plaintiff signed a "Disability Report Adult" form, under penalty of perjury, indicating that his highest level of education was "12." (AR at 108.)

---

[4] In the Joint Stipulation, the Court notes that Defendant inaccurately states that the ALJ applied the Medical-Vocational Rule 203.14 grid. (*See* JS at 13, 14.) As supported by the record, the ALJ utilized the Medical-Vocational Rule 203.21 grid. (AR at 18-19.)

However, the record also shows that at the hearing, Plaintiff clearly testified under oath that he only received a tenth grade education and did not pursue any other educational degree. (AR at 200.) As previously stated, where evidence is susceptible of more than one rational interpretation, the ALJ's decision must be upheld. Here, the evidence is not subject to more than one rational interpretation. Rather, it is subject to a single, mutually exclusive interpretation: either Plaintiff's education concluded after tenth grade or it concluded after twelfth grade. A fully developed record should either establish that Plaintiff received a twelfth grade education, or he did not. Thus, the ALJ erred at Step Five of the sequential evaluation, and possibly applied the wrong grid.

For the foregoing reasons, the Court finds that the ALJ erred and should have fully developed the record to determine Plaintiff's accurate educational achievements.

## VII.    REMEDY

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. *Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *Id.* at 1179 ("the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings"). However, where there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. *Id.*

Here, the Court concludes that the record must be fully developed with regards to Plaintiff's level of education, and thus, this matter is appropriate for remand. It is clear to the Court that the ALJ would be required to award benefits if a Step Five determination found Plaintiff had less than a high school education; therefore, this is not an instance where no useful purpose would be served by further administrative proceedings. Consequently, after making a proper determination of Plaintiff's level of education, based on a review of the complete record (*see* 20 C.F.R. § 404.1545(a)(3) (2007)), the ALJ should reevaluate Step Five of the sequential evaluation to determine whether Plaintiff is entitled to a

finding of disabled.

## VII. ORDER

For the foregoing reasons, the decision of the Commissioner is reversed and this matter is remanded for a new hearing consistent with this Memorandum Opinion.

DATED: July 23, 2007

JOHN C. RAYBURN, JR.
UNITED STATES MAGISTRATE JUDGE